
IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JANET PADILLA, ET AL. | § <br> § |
| Plaintiffs, | § <br> § |
| vs. | § Civil Action No. EP 05-CA-0478 <br> § <br> § **JUDGE MONTALVO** <br> § |
| UNITED STATES OF AMERICA, <br> GIOVANNI GAUDIOSO, ET AL. <br> Defendants, | § <br> § <br> § |

---

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DEFENDANT PATRICIA KRAMER'S MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION

---

Respectfully submitted,

LOYA & ASSOCIATES, P.C.

By: /s/ Raul Loya
Raul Loya
Texas Bar No. 00791142
Matthew Abraham
Texas Bar No. 24031683
10830 N. Central Expressway, Suite 200
Dallas, Texas 75219
Telephone (214) 521-8766
Facsimile  (214) 521-8820

**ATTORNEYS FOR PLAINTIFF**

# I.
## Preliminary Statement

Plaintiffs respectfully submit this Response in Opposition to Defendants' Motion to Dismiss and Memorandum in Opposition in response to Patricia Kramer's ("Kramer" or "Defendant") motion to dismiss pursuant to Rule 12(b)6. The plaintiffs Janet Padilla et al. ("Plaintiffs") collectively file this response in opposition to Defendant Kramer's motion to dismiss. As demonstrated below, Plaintiffs have plead a violation of a constitutionally protected right to life; the federal officer did not have an objectively reasonable belief that her conduct was authorized by law; and Kramer financed, sponsored, and approved the activities of the informant. Accordingly, Defendant Kramer's motion should be denied.

# II.
## Facts Alleged in the Pleadings

The action against Patricia Kramer, individually, arises under *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388 (1971) for intentional violations of the Plaintiffs' constitutional rights. ¶¶ 40, 108-110. The Plaintiff decedents including Luis Padilla, Fernando Reyes, Ramiro Ortiz, Oscar Rodriguez, David Castro, and Abraham Guzman were the victims of torture and murder by the hands of an informant sponsored by the government and several federal agents including Kramer. ¶¶ 42-97.

In the Complaint, Defendant Patricia Kramer is referred to as a federal officer and agent working for ICE and the Department of Justice acting individually, jointly, and/or severally with the other agents. ¶¶ 38, 39. Defendant Kramer was also acting in the scope of her employment with the Bureau of Immigration and Customs Enforcement ("ICE") and the United States Attorney, Department of Justice. ¶36. Kramer as a "federal agent[] committed the tortious acts within the scope of [her] federal employment pursuant to §2679(c)(d)(1)." ¶39.

Furthermore, Kramer is clearly identified as a federal office, agent and handler personally involved in the Ramirez cartel operations: Particularly, Kramer was 1) aware

the informant was participating in kidnapping and killings; 2) approved actions undertaken by Ramirez' 3) obstructed the internal affairs investigation undertaken by federal investigators, in order to conceal the negligent and criminal activity by Ramirez and his handlers. 4) Therefore, because of Kramer, Ramirez was able to continue unabated despite several management reviews and internal affairs investigations. ¶50.

The Complaint and Mr. Sandalio Gonzalez, DEA Special Agent in Charge, clearly delineates the "unnecessary loss of human life" caused by the negligence of agents (including Kramer) named in this complaint. ¶43. On about August 5, 2003, the BICE confidential source, [Ramirez] participated in murders in Ciudad Juarez. And BICE (Kramer) misrepresented to Mexican authorities that Lalo had merely "witnessed" a murder and would soon be available to provide testimony to the PGR. ¶45g. The CS-confidential source (Guillermo Ramirez Peyro) was in fact a participant in the torture/murder of Fernando Reyes Aguado, as reflected in his debriefing report dated August 25, 2003. ¶45h,i. All of these allegations are supported by documents, recordings and testimony.

BICE personnel (Kramer) have thrown obstacles in the DEA's way and concealed vital information that could have saved lives. During Lalo's debriefing by BICE agents, Lalo admitted to the killing of Fernando Reyes Aguado, as well as to knowing the exact location of the burial site because following the debriefing. The obstruction of the murder investigation by BICE officials and agents gave Lalo and the Santillan Tabares organization freedom to continue their killing spree for several more months. BICE obstruction eventually led to the sequestration, torture, and murder of Luis Padilla. ¶45m.

Following the August 2003 murder of Fernando Reyes Aguado, BICE personnel [Kramer], ignored well founded recommendations made by DEA agents to arrest Santillan and "take down" the case, thereby allowing at least thirteen other murders to take place in Ciudad Juarez, in what can only be described as a display of total disregard for human life, and disrespect for the rule of law in Mexico. ¶ 45p. BICE placed restrictions on DEA and went to great lengths to protect the "homicidal maniac." ¶45w-y. "BICE agents [including Kramer] allowed the CS, Guillermo Ramirez Peyro to continue on an unabated crime spree while under their so-called control." ¶45y.

PLAINTIFF'S REPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    3

Furthermore, "as early as August 2003, ICE officials including agent Cates, Kramer, Compton, the handlers and assistant U.S. attorney Fielden were aware that the informant was participating in kidnapping and killings."  ¶50 (emphasis added). Defendant informant "Guillermo Ramirez Peyro, a/k/a "Ramirez" or "Lalo", "SA-913-EP" debrief[ed] before the Drug Enforcement Administration, the Mexican Consulate, the Legal Attaché for the Attorney General's Office of the Republic of Mexico (PGR), and the Mexican Office of Public Depositions." ¶51 See also, Court Docket Entry #18, Motion to Dispose Material Witness Guillermo Ramirez, appendix (Under Seal).

Testifying under condition of immunity, Ramirez detailed the numerous killings he committed while under the protection of the United States government.  Ramirez bragged in grisly detail how the murders were carefully planned and carried out. ¶51. The informant admitted to the kidnapping and killings of several individuals including Luis Padilla, Fernando Reyes, David Castro, and also detailed the murder of Ramiro Ortiz, and Oscar Rodriquez.  ¶¶ 52, 53, and 97.

The agents, including Kramer, sponsored, ratified and paid the informant while he carried out torture and murder.  In August 2003 Ramirez had killed his first victim Fernando Reyes while on the U.S. payroll.  The killing was monitored and recorded by the ICE officials as it occurred.  ICE kept detailed accounts of the Reyes murder shortly after its occurrence. ¶52.

In the course of six months, Ramirez participated in the killings of over twelve (12) people, possibly more.  In each incident, the informant was instrumental in luring the victims to the house on Parsioneros Street in Juarez, Mexico where the killings occurred. He used duct tape, rope, and a plastic bag for extensive torture of the cartel victims. After each horrible ordeal, Ramirez would purchase sacks of lime for burial and decomposition of the bodies.  Ramirez stacked and buried the bodies on top of each other in the backyard of the house.  In a later debriefing, Ramirez provided his ICE handlers [including Patricia Kramer] a drawing of the house with numerous stick figures representing over a dozen murder victims.  ¶53; and Court Docket Entry 18, appendix Ramirez deposition and statement to DEA and PGR.

Additionally, before the Honorable Joseph Dierkes, on May 19th, 2005, Defendant Ramirez admitted in Court testimony that his activities were sponsored, ratified, and funded by the ICE agents. Court Docket Entry 18, appendix.

Under the authority of ICE and the agents, including Kramer, "Ramirez and the cartel members kidnapped and murdered: Ramiro Ortiz, Fernando Reyes, Oscar Rodriguez, and David Castro. Subsequently, Abraham Guzman was gunned down by assassins meant for Ramirez." ¶97.

"The actions and omissions of agents Cates, Garcia, Kramer ... were wanton and oppressive and were done with reckless and callous indifference to the Plaintiff decedent's constitutional rights. The actions, omissions and conduct of agents Garcia, Kramer, Curtis, Gaudioso, Fielden and handlers directly and proximately caused the Plaintiff's death." ¶¶ 101, 109, 110. By his own admission Ramirez was a key player in the torture and death of numerous victims. Docket Entry 18, appendix. Not surprisingly, the government feigns only "minimal" participation by Ramirez. As such, Kramer is only "a little bit pregnant" in her involvement with the Ramirez murders.

### III.
### AUTHORITIES AND ARGUMENT

#### A. Standards for Motion to Dismiss

At the threshold, Defendants' motion to dismiss should be denied unless "it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957) (movant must show "beyond a doubt that the plaintiff can prove no set of facts in support of his claim"); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

The Court must assume all material facts contained in the complaint are true, resolve all inferences in favor of the Plaintiff, Jamie Abrams. *Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 928 (5th Cir.) cert. Denied 1223 S.Ct. 600 (2002); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal for failure to state a

claim is disfavored and is rarely granted. *See In re United States Abatement Corp.*, 39 F.3d 556, 559 (5th Cir. 1994).[1]

"A court's task in ruling on a[n] [FRCP] 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2nd Cir. 2003). "A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense." *Memphis Tenn. Area Local v. City of Memphis*, 361 F.3d 898, 904 (6th Cir. 2004). Furthermore, "12(b)(6) motions have adopted the incorporated by reference doctrine," and can refer to a document attached to the pleading. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). Therefore, the Plaintiffs refer the Court to Docket Entry 18, appendix, regarding Ramirez admissions.

### B. The Plaintiffs Have Identified and Pleaded a Constitutional Violation – Right to Life

According to the Supreme Court, the Plaintiffs must establish two overlapping elements to overcome the defendant's motions to dismiss and summary judgment in a *Bivens* action. First, Plaintiffs pleading must show a violation of constitutional rights by the defendant. The focus is on the individual's conduct rather than the conduct of the agency. Second, the Plaintiffs show that the constitutional violation had been clearly established by prior case law. The proof must also show that the defendant's conduct was not based upon an objectively reasonable belief that his conduct was legally permissible. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).

According to the Firth Circuit, the unprovoked and unjustified assault on a person, causing severe physical abuse transcends the bounds of ordinary tort law and establishes a deprivation of constitutional rights. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981)(the assault was unprovoked and unjustified and therefore find the physical abuse in this case sufficiently severe, sufficiently disproportionate to the need presented

---

[1] "The legal standards for review of motions pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 12(c) are indistinguishable ..." *DeMuria v. Hawkes*, 328 F.3d 704, 706 n. 1 (2nd Cir. 2003).

and so deliberate and unjustified and transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights).

Subsequent cases have upheld the *Shillingford* ruling. In *Palmer v. Larez*, 42 F.3d 975, 978 (5th Cir. 1995), the state's action causing "severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." The Court reasoned that "the degree of force exerted and the extent of physical injury inflicted that together amount to a constitutional deprivation must, of course, be determined by the facts of a given case." Id. "Actions permissible in controlling a riotous mob or in dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian." Id. at 979.

In the present case, none of the victims in this case were ever tried, or convicted for any wrongdoing. They were merely sentenced to death. The informant was allowed to torture and murder at will.

The Plaintiffs complaint states that the federal officers, including Kramer, failed to take appropriate action to stop the kidnapping, torture, and murder of the decedents. The informant Ramirez participated in the deaths of the victims. The informant was acting as an agent of the federal officers in conducting his activity. Finally, the complaint clearly states that the federal officers ratified and approved of Ramirez's conduct, and in some instances knew of the proposed activity before it occurred. The federal agents provided the informant killer with money, firearms, and intelligence.

In accordance with *Harlow v. Fitzgerald*, the Plaintiffs have pled the following:

A. The Plaintiffs have plead a constitutionally protected right to life
B. The federal officers did not have an objectively reasonable belief that their conduct was authorized by law.

C. The federal officers ratified and approved of the informant's conduct, possibly against government and agency policy.[2]

The Fifth Circuit denies 12(b)6 motions to dismiss where the Defendant speciously "cherry picks" paragraphs from a complaint then asserts that the whole complaint is conclusionary. *Doe by Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1402 (5th Cir. 1996). In *Doe v. Hillsboro*, the Court §1983 the recognized the defendant's self serving and less than candid 12b6, stating the following:

> The School Officials speciously "cherry pick" paragraphs from Doe's complaint to quote to us, then assert that the whole complaint is conclusionary. When examined in isolation, the particular paragraphs selectively quoted by the School Officials do appear conclusionary; but when those quoted paragraphs are read in *pari materiae* with the factual allegations contained in the preceding dozen-plus paragraphs of Doe's complaint, it becomes obvious that the School Officials have self-servingly quoted only parts of the complaint. In short, the quoted paragraphs do not fairly represent the complaint as a whole.
> *Doe v. Hillsboro*, 81 F.3d at 1402.

Furthermore, the Court concluded that "Doe's complaint is read in its entirety it is seen to plead Jane's claims with more than enough particularity to meet the requirements ... Accordingly, we will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

In similar fashion, Kramer's motion to dismiss speciously "cherry picks" one isolated paragraph from the complaint in a self serving attempt to make the entire complaint appear conclusionary. The First Amended Complaint, read *pari materiae* in its entirety, is clearly plead with enough particularity to meet the requirements set forth by the Firth Circuit. "The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Doe v. Hillsboro*, 81 F.3d at 1401.

---

[2] The Bivens claim against the individual federal agents is alternative to the FTCA claim against the government

### C. Kramer Knew of the Constitutional Violations –Planned Torture and Murder And is Not Entitled to Qualified Immunity

The Plaintiffs can prove a constitutional violation by Kramer. The constitutionally protected right to life is "clearly established law." The Defendant official is charged with "presumptive knowledge of and respect for basic, unquestioned constitutional rights." *Harlow*, 457 U.S. at 815. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. *Id.* at 818, 819. "By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct." *Id.* 819.

More importantly, Ramirez's sworn testimony regarding the murders negates any reasonable belief that Kramer held any reasonable belief that her conduct was lawful. Kramer knew or reasonably should have known that her actions, within her sphere of official responsibilities, violated the constitutional rights of the plaintiffs. The Plaintiffs have asserted facts sufficient to show that the federal officers including Kramer did not have an objectively reasonable belief that her conduct was authorized by law. In this case, Kramer's sponsored, assisted, and approved the operations of Ramirez in the kidnapping and torture of several Plaintiffs.

According to the Fifth Circuit, in *Palmer v. Larez*, evaluating the defendant's right to a qualified immunity defense necessitates a two-step inquiry: "First, one must determine whether the plaintiff has alleged a violation of an established constitutional right." "Second, if a constitutional right has been violated one must determine if the defendant's conduct was objectively reasonable." *Palmer v. Larez*, 42 F.3d 975, 978 (5th Cir. 1995)(*citing King v. Chide*, 974 F.2d 653, 656-57 (5th Cir. 1992) for two-step inquiry; and *Siegert v. Gilley*, 500 U.S. 226, 231 (1991) for violation of established constitutional right; and *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993).

Under the first step, the officer's conduct is measured by "currently applicable constitutional standards." *Perez v. Larez*, (citing *Rankin v. Klevenhagen*, 5 F3d. 103, 105 (5th Cir. 1993)). Under the second step, if there is a constitutional violation, the officer's conduct for determining qualified immunity is "measured by reference to clearly

established law." *Id. citing Anderson v. Crieghton*, 483 U.S. 635, 638 (1987); *Rankin*, 5 F3d at 105.

In the present case, Kramer's state created danger argument has no merit. The *Beltran v. City of El Paso*, does not apply to this case. *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004). *Beltran* involved a 911 family violence case, where the father became physically and verbally abusive. Because of the classification, no police units immediately responded and soon after, the father shot and killed the daughter and grandmother. The City was sued under 42 U.S.C. §1983 regarding the classification of the 911 call. *Id.* 301, 301.

Obviously, the City providing "protective services" through its 911 call center is not a constitutionally protected right. The City's action in assigning the "family violence assault" calls to a lower priority than "injury to a child in progress," the evidence did not raise triable fact issues concerning intentional gender-based discrimination under §1983. Id. More importantly, there is no rational argument that the City did not sponsored, financed, and supported the father who killed his daughter and grandmother.

In contrast, the Kramer and her co-defendants clearly violated the Plaintiffs constitutional rights. The Defendants sponsored, financed, and supported the informant during several premeditated murders. The killing of Reyes was monitored and recorded as it occurred. Despite this knowledge, the agents continued to support the killer in subsequent murders. The Agency and Kramer had foreknowledge that other murders were to occur. Ramirez states that Agency and agents knew of the planned murders:

> **"Being in Chicago with the agents from ICE, and they knew because I authorize for them to hear my phone conversation. And besides that, I told them what's going on, and in El Paso they were listening my phone calls."**

Ramirez Court transcript, August 11, 2005, page 88. See Court Docket Entry 18, appendix.

Q. **Sir, did you ever personally witness any police officers in Mexico kill anybody?**
A. **Yes, actually I record a homicide that was done by the police. [Fernando Reyes]**

PLAINTIFF'S REPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS            10

Id. Ramirez, pages 65, 66, Document Court Docket Entry 18, appendix.

Kramer is liable for her deliberate decisions to deprive the Plaintiff of their life, liberty, or property. Kramer violated the Decedent's constitutional right to life and to be free from severe assault and torture.

**Fourth Amendment Violation:**

The Supreme Court's holding in Bivens the Federal Constitution's Fourth Amendment violations by federal agents acting under color of their authority creates an implied right of action for damages against such agents, which right arises from the Fourth Amendment itself. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 392-397 (1971).

The Fourth Amendment, the Supreme Court stated, operates as a limitation on the exercise of federal power regardless of whether the state in whose jurisdiction that power was exercised would prohibit or penalize the same conduct if engaged in by a private citizen. Damages have historically been regarded as the ordinary remedy for the invasion of personal interests in liberty, the Supreme Court pointed out. Where legal rights had been invaded and a federal statute provided for the general right to sue for such invasion, a federal court could use any available remedy to make good the wrong done. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 392-397 (1971); *see also, Wilson v. Layne,* 119 S.Ct. 1692 (1999); *Sosa v. Alvarez-Machain,* 124 S.Ct. 2739 (2004)(Bivens decision provides damages remedy for violations of Federal Constitution's Fourth Amendment).

**Fifth Amendment Violation**

In accordance with Bivens, the United States Supreme Court has held or recognized generally that alleged violations of the due process clause of the Federal Constitution's Fifth Amendment may give rise to an implied cause of action for damages. *Davis v. Passman,* 99 S.Ct. 2264 (1979)(Bivens action arose under Fifth Amendment violation). The Supreme Court determined that the Plaintiff was entitled to due process

protection, since coverage of the Civil Rights Act was not intended to foreclose alternative remedies under Bivens. *Id.*

**Eighth Amendment Violation**

The Supreme Court Carlson v. Green 100 S.Ct. 1468 (1980), held that federal officials who had allegedly violated rights under the Federal Constitution's Eighth Amendment were, at least under the circumstances of a particular case, subject to damages liability under the rule of Bivens. The representative of a deceased federal prison inmate's estate--which representative alleged in part that the inmate had died as a result of prison officials' violation of the inmate's rights under the Federal Constitution's Eighth Amendment prohibition against cruel and unusual punishments--was held in to have a damages remedy against the officials on the Eighth Amendment claim under the Bivens rule. The Eighth amendment violation did not depend on incarceration as argued by Kramer, but on the cruel and unusual punishment. See Farmer v. Brennan, 114 S.Ct. 1970 (1994) (Supreme Court allowed an action against federal officials to proceed on an Eighth Amendment grounds prohibiting cruel and unusual punishments, for failing to prevent a sexual assault).

The Supreme Court's analysis of civil rights cases is the same. The Court notes that "the guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." *Reed v. Davis*, 2004 U.S.DIST LEXIS 21876 (D.Texas 2004)(Western District of Texas citing *Conroe Creosoting Co. v. Montgomery County, Tex.,* 249 F.3d 337, 340-41 (5th Cir. 2001) and Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662 (1986)). The overarching objective of this doctrine is to prevent government officials from "abusing [their] power, or employing it as an instrument of oppression." *Id. Conroe* at 341. Courts generally examine substantive due process challenges to government action by asking "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (*citing County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 118 S.Ct. 1708 (1998)).

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request that the Court:

(1) Deny the Defendant's Motion to Dismiss for Failure to State a Claim;

(2) Deny the Defendant's motion to dismiss on grounds of Qualified Immunity.

(3) Grant such further and additional relief as the Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**LOYA & ASSOCIATES, P.C.**


By:_____
    Raul Loya
    Texas Bar No. 00791142
    Matthew Abraham
    Texas Bar No. 24031683
    10830 N. Central Expressway, Suite 200
    Dallas, Texas 75219
    Telephone (214) 521-8766
    Facsimile (214) 521-8820

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that on September 18th, 2006, this document was filed with the Clerk for the United States District Court for the Western District of Texas, El Paso Division, using the CM/ECF filing system as ordered by the Court. The system will send a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means all others will be sent a copy through the United States postal service. The attorney of record for the Defendant authorized to accept Notice is listed below.

By: _____
Raul Loya

Mr. Marvin Moos
EBANKS, SMITH & CARLSON
1401 McKinney
Houston, Texas 77010

Mr. John A. Broadwell
U.S. ATTORNEY'S OFFICE
Western District of Louisiana
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101

Ms. Mary Stillinger    **VIA U.S. MAIL**
Attorney at Law
4911 Alameda
El Paso, Texas 79905

Mr. Duane Baker
Attorney at Law
303 Texas, Suite 1400
El Paso, Texas 79901-1461

Mr. Ronald Ederer
The Law Office of Ron F. Ederer
1020 N.E. Loop 410, Suite 505
San Antonio, Texas 78209

Mr. Gary B. Weiser
Attorney at Law
521 Texas Avenue
El Paso, Texas 79901