IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JANET PADILLA, ET AL. § | |
| § | |
| Plaintiffs, § | |
| § | |
| vs. § | Civil Action No. EP 05-CA-0478 |
| § | |
| § | **JUDGE MONTALVO** |
| UNITED STATES OF AMERICA, § | |
| GIOVANNI GAUDIOSO, ET AL. § | |
| Defendants, § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Plaintiffs by and through undersigned counsel, and files this Plaintiffs' Supplemental Response in Opposition to Defendants U.S.A and Giovanni Gaudioso, et al., the individual federal agents, motion for summary judgment and motion to dismiss and submits the memorandum of law in opposition and incorporates by reference the Appendix 1-106 filed separately would show as follows:

**I.
Background**

The behavior of the defendants is so egregious, so outrageous, that it will shock the conscious of the Court. Several borderland residents were tortured and killed under the watchful eye of officials of the Bureau of Immigration and Customs Enforcement (ICE). That agency stood idle while their paid informant Eduardo Ramirez (Lalo or killer herein) participated in numerous murders. This homicidal maniac was an integral part of the abduction and murder several helpless victims. He contacted the victims, arranged for

their transportation to the House of Death, restrained the victim while he was smothered or bludgeoned to death, provided lye for the grave, and paid the gravediggers to dispose of the bodies. Each victim endured gruesome torture and suffered a horrific death. Forensics reveals that some of the victims were actually buried alive.

The ICE agents had prior notice of the planed murders or "carne asadas," as they were called. They monitored phone calls and the informant's confirmations left no doubt that a violent crime was to take place. Yet the government agents did nothing.

The defendants took no steps to protect those individuals who had been targeted for torture and death. On the contrary, the government sanctioned and supported the informant who participated in at least ten murders. There was no justification for continued support of this killer.

It is unconscionable, that the federal agents knew of the intended victims targeted for murder –and did nothing. Denying the victims of even a cautionary warning shows a complete disregard for human life. The agents stood idle while the decedents faced horrific torture and death. Their dereliction of duty belies their hatred of the Hispanic victims.

The victims' constitutional rights were violated when no effort was made to stop the killings. Failure to take action escapes logic and the bounds of human decency. It is shocking to consider the depths of wickedness supported and sponsored by a group of agents intent on prosecuting a mid-level cartel participant at any cost. It is intolerable and inconceivable that the defendants now seek immunity for their misdeeds.

The evidence is overwhelming against the agents. The proof is found in the admissions of the informant, incident reports, court testimony, DEA reports, and expert evaluation.

## II.
## The Federal Agents Are Not Entitled to Qualified Immunity

### A. The Federal Agents Violated the Constitution

The Fifth Circuit's recent decision in *Mack v. City of Abilene*, denies immunity to government officials if their conduct violates clearly established statutory or constitutional rights that a reasonable person would have known of. 461 F.3d 547, 555 (5th Cir. 2006). Finding a violation of 42 U.S.C. §1983, the Court explained that "the

search of a car in an open parking lot without a search warrant, without probable cause, without concern for officer safety, and without consent violates clearly established law." *Id.* at 556. The court denied the "defense of qualified immunity for the unconstitutional search" in violation of the Fourth Amendment. *Id.* To determine the issue of qualified immunity, the court asks "whether the contours of the constitutional right in question was sufficiently clear that a reasonable officer would understand that what he or she was doing violates that right." *Id.* at 555.

The constitution prohibits governmental misconduct and guarantees persons who face deprivations of life, liberty, or property, the protections of due process of law. In the present case, it is sufficiently clear that a reasonable ICE agent would understand that what he or she was doing in operating and controlling the informant violated the victims' right to life. The agents were forewarned that El Paso residents were being targeted for murder.[1] The agents did nothing. Instead, the government and the agents allowed twelve murders to occur in order to pursue a cigarette trafficking case. *See* EP-03-CR-2294.

The Supreme Court and Fifth Circuit apply the "guarantee of due process ... to deliberate decisions of government officials to deprive a person of life, liberty, or property. The overreaching objective of this doctrine is to prevent government officials from abusing their power or employing it as an instrument of oppression." The courts determine a violation when "the behavior of the governmental officer is to so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Conroe Creosoting Co. v. Montgomery County, Tex.,* 249 F.3d 337, 340-41 (5th Cir. 2001).[2]

The government and the agents' deliberate refusal to intercede deprived the victims of life and liberty. The government support of a confessed murder as an instrument of oppression is so egregious, so outrageous, that it shocks the contemporary conscience. Even in the absence of any guidelines prohibiting violent crimes, the defendants supported a serial killer and ignored every constitutional protection. The defendants sacrificed twelve lives in pursuit of a simple cigarette case.

---

[1] Appendix pgs. 15 -17, 18, 19 Court transcript; App. pgs. 22, 23, 25, 26, 29 Ramirez recorded statement; App. pgs. 37 ICE debriefing memorandum; App. pgs.67, 68 Ramirez deposition exhibit sworn statement; App. pgs.103 -106 Expert affidavit.

[2] Citing *County of Sacramento v. Lewis,* 118 S.Ct. 1708 (1998)(constitutional violations shock the conscience); *Reed v. Davis,* 2004 U.S.DIST LEXIS 21876 (D.Texas 2004)(Western District of Texas citing *Conroe Creosoting Co. v. Montgomery County, Tex.,* 249 F.3d 337, 340-41 (5th Cir. 2001) *and Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662 (1986)).

On several occasions, the defendants ignored the notice of a "carne asada," by a confessed killer.[3] The defendants had notice before the murders occurred, while they occurred,[4] and after they occurred they debriefed the informant.[5] Each time, the government and agents refused to shut down the operation. Instead, they chose to support a confessed killer. The defendants are not entitled to immunity for violating the victims' constitutional rights and arbitrarily ending their life.

## B. Federal Agents Violated and Ignored the Department Mandates

"If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *U.S. v. Gaubert*, 499 U.S. 315, 324 (1991). A discretionary act is one that involves choice or judgment. *Id.* at 325. A federal official does not have discretion to refuse to follow the Justice Department mandates. *Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990); *United States v. Salemme*, 91 F.Supp. 2d 141 (D.Mass. 1999). In *Ignatiev v. United States*, the court cited *Gaubert*, for the proposition that "internal guidelines can be an actionable source of a mandatory obligation under the FTCA." 238 F.3d 464, 467 (D.C. Cir. 2001).

The U.S. Customs Service enforcement handbook strictly prohibits an informant from committing crimes and in participating in any acts of violence. App. Pgs. 73 -83. Should this occur, the informant is to be immediately blackballed App. Pgs. 75, 76. In this case, the informant admitted his involvement in the murder of Fernando Reyes.[6] The informant debriefing by ICE admits the following: the informant obtained gauze for the victims mouth, duct tape, and sacks of lime for disposal of the body.[7] According to ICE the informant directed his cohorts to the plastic bag used to suffocate the Fernando.[8] The informant, admits, however, that he handed them the plastic bag and directed them to

---

[3] *See supra* footnote 1.
[4] All of the cartel cellular phones were monitored by ICE officials.
[5] App. Pgs. 36 -50, ICE debriefing of informant.
[6] App. Pgs. 11, 14, 15 Immigration Court transcript; App. Pgs. 22, 23 Ramirez recorded statement; App. Pgs. 36 -50 ICE debriefing of informant, "minimally participating" in murder; App. Pg. 67 Ramirez deposition exhibit admitted and adopted by deponent on app. pg. 57.
[7] App. Pgs. 43 -45, 47 -49 ICE Memorandum Debrief of informant.
[8] *Id* App. Pgs. 47

strike Fernando on the head several times with a shovel to make sure he was dead.[9] The defendants dismissed the informant's involvement as "minimal participation" in murder, a category not mentioned in any guideline or regulation.

Nowhere do the guidelines allow an informant to "minimally participate" in murder. "The use of the CI should be immediately suspended," if such conduct is uncovered. App. Pg. 88 Confidential informant policy. Instead the defendant refused to shut down the operation and routinely provided the informant with firearms –a direct violation of the guidelines.[10] The defendants supported and enabled a homicidal maniac[11]. He was free to kill again and again.

The informant was paid, armed and authorized by ICE to continue "participating" with the cartel tortures and murders.[12] The informant repeatedly told the ICE officers of new victims targeted for murder.[13] "On several occasions the informant told them right before it happened." "[ICE] knew about the murders but the investigation still continued." App. Pgs. 15, 16, 19 Court transcript. The informant was allowed to continue participating in killings, with only one caveat –don't record them.[14] App. Pg. 32. It was business as usual. On September 11th, 2003, in November 2003, January 8th, 2004, January 13th, 2004 the informant and ICE receive specific notice of a "carne asada."[15] On separate occasions, the informant bought a tarp to cover the floor and eight sacks of lime.[16]

By all indications the informant should have been "blackballed" according to the

---

[9] App. Pg. 67 Ramirez Deposition exhibit sworn statement p. 4 of 8.
[10] App. Pgs. 38 ICE provided informant with firearm; *compare with* App. Pgs. 75, 76 Blackballed source, *and* Pgs. 82 criminal acts prohibited.
[11] The DEA SAC Sandalio Gonzalez refers to the informant as a homicidal maniac.
[12] App. Pgs. 11, 15 -17, 24, 27 Court transcript; App. Pgs. 93 New Mexico indictment dismissed.
[13] *See supra* footnote 1.
[14] The government attempted to hide its complicity in the murders. The original sealed indictment filed on December 3, 2003, Cause No. EP-03-CR-2291-KC makes no mention of the Reyes killing. The superseding indictment filed on February 2004, acknowledges the murder of Reyes on August 5th, 2003; Luis Padilla on January 14th, 2004,[14] by the informant and the cartel. According to the informant, the last victim Abraham Guzman was murdered in August 2004 as a set up by ICE officials. The agents also "counseled, commanded, induced, procured and caused the intentional killing" as detailed in the indictment and codified under Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2. Furthermore, 18 U.S.C. §2340A assigns criminal liability for torture and murder occurring **outside** the United States.[14]
[15] App. Pg. 67, 68 Ramirez sworn deposition exhibit.
[16] *Id.* pg. 67

---

guidelines in order to prevent harm or danger to civilians.[17] At the very least, an informant must discourage criminal acts or <u>such plans</u> and promptly notify the USCS.[18] ICE failed to comply with the Title 21 Cross Designation Agreement with DEA, mandated in the guidelines.[19] The checks and balances would have prevented further bloodshed after the original Reyes murder.

The guidelines negate any gray area. According to the Secretary, the agency has a duty to warn the person of the extent of the threat. "The ICE case agent ... must ... warn the intended victim(s)."[20] The agents have an affirmative duty to discourage acts of violence and protect the public. A duty the Defendants deliberately ignored.

According to the ICE informant handbook: A blackballed source cannot be used by any Customs Officer."[21] Nevertheless, in August 2004, the last murder victim, Abraham Guzman, was killed as a result of a "set up" by ICE to allow the informant to be killed by the cartel. The informant was supposed to be blackballed but ICE used him anyway. The informant acknowledges that he was still working for ICE in an operation to track down a corrupt customs official. The ICE officials authorized and sent the informant to meet with the cartel members to pick up money at the local Whataburger to pay off the customs official. According to Ramirez, "the purpose was to get some money to receive some money for some crossing that was done that morning with ICE. [It] was a crossing that was done so they [ICE] could detect some corruptions." App. Pgs. 8, 9 Court transcript.

The informant knew, however, that ICE wanted him dead. Suspecting this was a set up, the informant sent his neighbor Guzman for the pick up. The informant watched as two gunmen shouted "Lalo" as they emptied their handguns in the back of Guzman's head, hitting him four times. ICE was attempting to allow the informant Lalo to be killed by the cartel. Guzman got killed instead. Even the DEA found it ironic that ICE agents, who monitored the transaction, allowed the shooters to get away. No attempt to apprehend the shooters was attempted.

---

[17] App. Pgs. 75 -79, Guidelines chap. 41, p. 2, 5, 9.
[18] *Id.* App. Pg. 82.
[19] *Id.* App. Pg. 81.
[20] *Id.* App. Pg. 82.
[21] *Id.* App. Pg. 75, 76.

---

## III.
## Ramirez' Testimony is Admissible Evidence in Accordance with Rules of Evidence

The informant's sworn testimony at United States Immigration Court is relevant and admissible, and not hearsay pursuant to Federal Rule of Evidence 804(b)(1). *See Battle v. Memorial Hosp.*, 228 F.3d 544, 552 (5th Cir. 2000). According to Rule 804(b)(1) former testimony is not hearsay when "given as a witness at another hearing of the same or a different proceeding ... in a civil action or proceeding in which a predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." FEDERAL RULE OF EVIDENCE 804(b)(1). The Rule requires that the Defendants have had a similar motive to develop the informant's former testimony. *See United States v. Salerno*, 505 U.S. 317, 326, 112 S.Ct. 2503 (1992) ( similar motive does not mean identical motive); *Am. Econ.Ins. Co. v. Rutledge*, 2007 U.S.DIST. LEXIS 2844 (D.Ala. 2007). Therefore, Ramirez's sworn testimony in immigration court is offered for the same issue –the informant's work for ICE and the murders. Therefore, his prior testimony is admissible evidence. *See* App. Pgs. 1 -19 court transcript.

Additionally, Rule of Evidence 804(b)(3) is an exception to the hearsay rule, allowing the admission of statements that are contrary to the declarant's interests at the time they are made." *U.S. v. Forest*, 355 F.3d 942, 954 (6th Cir. 2004); *U.S. v. Canan*, 48 F.3d 954, 959 (6th Cir. 1995). Rule 807, formerly 804(b)(5), authorizes admission of statements that are material, probative, and furthers interest of justice. Ramirez's recorded declarations are also admissions against interest; and therefore, admissible evidence. *See* App. Pgs. 1 -19 court transcript; *and* App. Pgs. 20 -35 recorded statement.

Furthermore, Ramirez and ICE both admit that the informant had participated in the murder of Reyes while in the employment with ICE.[22] Ramirez admits wrestling the victim's legs while cartel operatives smothered and bludgeoned him to death.[23] He directed his accomplices to strike Ryes on the head with a shovel –to make sure he is

---

[22] App. Pgs. 5, 11 Court transcript; App. Pgs. 43 -45 ICE memorandum, "minimal participation" at p. 37; App. Pg. 63 Ramirez deposition.
[23] App. Pg. 67 Ramirez Deposition exhibit sworn statement p. 4 of 8; *supra* footnote 6.

dead.[24] In addition Ramirez, as with the later murders, contacted the victim to arrange a meeting at the House of Death, alerted cartel hired killers of the plan and location, purchased rope and plastic bags to use in killing and burying the victim, purchased lye for the grave site, and paid those who dug the graves and buried the victim.[25]

Ramirez claims he was authorized by his ICE handlers to continue operations with the cartel, despite committing criminal acts –including murder.[26] "Everything I did, I did it under supervision, direction, and surveillance of the U.S. Government."[27] ICE officials sponsored, and paid the informant and provided him with firearms –for no other reason than to participate in acts of violence.[28] ICE authorized his continued participation in violation of its regulations and guidelines.[29] More importantly, Ramirez admits that on "several occasions" he informed ICE officials ahead of time -that new victims were targeted for murder.

## IV.
## CONCLUSION

The Plaintiffs pray that the Court Deny the Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6); and Deny the Defendants' motion for summary judgment under Rule 56. Furthermore, the Plaintiffs requests leave to file the Second Amended Complaint in accordance with the Court's Scheduling Order, Rule 15. Likewise, recent decisions of the Fifth Circuit shed further light on *Biven's* litigation. The Defendants violated clearly established constitutional rights and their own internal guidelines.

It is abundantly clear that the behavior of the ICE agents is so egregious, so outrageous, that it shocks the contemporary conscience. The agents lost all moral compass. In a gross dereliction the agents dismissed their duty as law enforcement

---

[24] *Id.*
[25] *See supra* footnote 6.
[26] App. Pgs. 5, 11, 36 Court transcript –Ramirez continued working until 2004; App. Pgs. 43 -45 ICE memorandum, allowed "minimum participation" at p. 37; App. Pg. 67 Ramirez Deposition exhibit sworn statement, and p. 63.
[27] App. Pg. 63 Ramirez Deposition page 47.
[28] App. Pgs. 36 -50 ICE memorandum
[29] *Compare* App. Pgs. 37 ICE memorandum allowing "minimal participation" in murder with App. Pgs. 78 -83 U.S. CUSTOMS SERVICE ENFORCEMENT HANDBOOK, Chapter 41, acts of violence strictly prohibited; App. Pgs. 103-0106 DEA SAC Expert affidavit.

---

officers to uphold the constitution of the United States. They are without excuse. Therefore, they are not entitled to qualified immunity for the deaths of several individuals at the hands of their informant. This case should proceed to trial on the merits.

Respectfully submitted,
LOYA & ASSOCIATES, P.C.

By: _____
Raul Loya
Texas Bar No. 00791142
10830 N. Central Expressway, Suite 200
Dallas, Texas 75219
Telephone (214) 521-8766
Facsimile (214) 521-8820

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on January 30th, 2007, this document was filed with the Clerk for the United States District Court for the Western District of Texas, El Paso Division, using the CM/ECF filing system as ordered by the Court. The system will send a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means all others will be sent a copy through the United States postal service. The attorney of record for the Defendant authorized to accept Notice is listed below.

By: *Raul Loya*
Raul Loya

Mr. Marvin Moos
EBANKS, SMITH & CARLSON
1401 McKinney
Houston, Texas 77010

Mr. John A. Broadwell
U.S. ATTORNEY'S OFFICE
Western District of Louisiana
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101

Ms. Mary Stillinger
Attorney at Law
4911 Alameda
El Paso, Texas 79905

Mr. Duane Baker
Attorney at Law
303 Texas, Suite 1400
El Paso, Texas 79901-1461

Mr. Ronald Ederer
The Law Office of Ron F. Ederer
1020 N.E. Loop 410, Suite 505
San Antonio, Texas 78209
Mr. Gary B. Weiser
Attorney at Law
521 Texas Avenue
El Paso, Texas 79901